

**SIGNED this 18th day of February, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-53579-CAG |
| | § | |
| PAUL ALLEN INGRAM, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE, POC NO. 2-1

Came on to be considered the above-numbered bankruptcy case, and, in particular, Debtor's Objection to Claim of Internal Revenue Service, POC No. 2-1 ("United States" or "IRS") (ECF No. 10), and the United States, IRS's Response thereto (ECF. No. 19). The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is a core proceeding under 11 U.S.C. § 157(b)(2)(A) and (B) in which the Court may enter a final order. This matter is referred to this Court under the District's Standing Order of Reference. The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9013. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014. The Court also finds that it has the requisite authority

1

to issue a final order. *See Stern v. Marshall*, 131 S. Ct. 2594 (2011) (finding that a bankruptcy court may issue final orders in claims objections). The Court took this matter under advisement on November 19, 2013, and is of the opinion that Debtor's Objection should be DENIED.

## BACKGROUND

Debtor, Paul Allen Ingram, filed a Chapter 13 petition for relief on November 16, 2012, along with his Schedules, Statement of Financial Affairs, and Chapter 13 Plan (ECF No. 1). Debtor's Chapter 13 Plan made no provision for payment of the IRS's claim and indicated that the claim was disputed. The IRS filed its original proof of claim on December 13, 2012, in the amount of $115,246.20. Of that amount, the IRS asserts a secured claim in the amount of $5,982.00 for the fourth quarter of 2009. Additionally, the IRS asserts a priority tax claim pursuant to 11 U.S.C. § 507(a)(8) (2012) in the amount of $109,158.20 for the fourth quarter of 2009 and first through third quarters of 2010. The IRS also asserts an unsecured general claim for penalty and interest on the IRS's priority claim through date of petition in the amount of $106.00.

Debtor objected to the IRS's proof of claim on January 9, 2013, alleging that Debtor was not a responsible officer for the collection and remittance of withholding taxes for his corporate employer – Santex Commercial Services ("Santex"). Debtor asserts that he does not meet the definition of what constitutes a "responsible officer" under 26 U.S.C. § 6672 (2012). The IRS filed a general denial on February 1, 2013, alleging that Debtor, under applicable Fifth Circuit precedent, was properly determined to a responsible officer for Santex and failed to remit the withheld payroll taxes from the employees of Santex. The United States then filed an Unopposed Motion to Invoke all of the Bankruptcy Rules contained in Part VII of the Federal Rules of Bankruptcy Procedure (ECF. No. 15) and this Court signed an Order approving same on January 30, 2013 (ECF. No. 17). Thereafter, the Court issued a Scheduling Order on February 4,

2013 (ECF No. 22) and the parties conducted discovery and prepared their respective cases for trial.

The IRS's claim is based on a trust fund penalty assessed against Debtor for unpaid payroll taxes. The IRS alleges that Debtor was responsible for collecting and remitting taxes withheld from employee wages to the IRS. The IRS determined Debtor to be "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(a) (2012). As such, the IRS imposed a civil penalty against Debtor for violating § 6672(a) because Debtor had the responsibility to collect and remit employee withholding taxes to the IRS. Section 6672(a) states that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

**STATEMENT OF LAW**

Debtor does not dispute that the IRS followed proper administrative procedures in making the trust fund penalty assessment against Debtor. Further, it does not appear from Debtor's Objection to the IRS's proof of claim that Debtor objects to the classification of the claim. Rather, Debtor disputes that he has any liability as a responsible officer because he does not meet the test this Circuit has articulated in determining who is a responsible officer.

Section 6672 provides in relevant part that "[a]ny person required to collect . . . and pay over any tax imposed by this title . . . shall . . . be liable to a penalty equal to the total amount of the tax evaded . . . ." Trust fund taxes constitute the withholding and Social Security taxes

3

required to be deducted by employers from wages paid to employees. ***In re Ribs-R-Us Inc.***, 828 F.2d 199, 200 (3rd Cir. 1987).

26 U.S.C. §§ 3102(a) and 3402(a) require employers to withhold the employees' share of federal social security taxes and income taxes from the wages of their employees. The money withheld from each employee's wages is then held by the employer in trust ("trust fund monies") for the benefit of the United States as provided for by 26 U.S.C. § 7501(a). ***Slodov v. United States***, 436 U.S. 238, 242-43 (1978); ***Barnett v. Internal Revenue Serv.***, 988 F.2d 1449, 1453 (5th Cir. 1993); ***Turnbull v. United States***, 929 F.2d 173, 178 (5th Cir. 1991); ***Howard v. United States***, 711 F.2d 729, 733 (5th Cir. 1983).

These funds do not belong to the employer and are not to be used by the business. If an employer withholds these taxes but fails to pay them over to the United States, the employee is given full credit for having paid the taxes, and the United States may not require any additional payment from the employee. Thus, unless the IRS can collect these taxes from the employer or the persons responsible for the collection and nonpayment of the taxes, the revenues are forever lost to the United States. ***Slodov***, 436 U.S. at 243-45; ***USLIFE Title Ins. Co. of Dallas v. Harbison***, 784 F.2d 1238, 1242-43 (5th Cir. 1986); ***Howard***, 711 F.2d at 733.

Although previously denominated a "penalty" (now referred to as "trust fund penalty"), liability under § 6672 "shall be assessed and collected in the same manner as taxes." 26 U.S.C. § 6671(a). Moreover, the IRS need not attempt collection from the employer before assessing the responsible officer. ***Ribs-R-Us***, 828 F.2d at 201.

The Supreme Court in ***Slodov***, when interpreting § 6672, held that:

> We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question.

4

*Slodov*, 436 U.S. at 250 (quoting 26 U.S.C. § 6672).

"An individual need not engage in all three of the activities listed in the statute in order to be held liable, involvement in any one of the three named activities is sufficient." *Verret v. United States*, 542 F. Supp. 2d 526, 533 (E.D. Tex. 2008), *aff'd,* 312 F. App'x. 615 (5th Cir. 2009) (citing *Slodov*, 436 U.S. at 250).

There are two elements to liability under § 6672. The first is that a person upon whom liability is to be imposed must be a person required to collect, truthfully account for, or pay over any tax, commonly referred to as a "responsible person." The second requirement under § 6672 is that such responsible person willfully failed to collect, truthfully account for or pay over such taxes. *Barnett*, 988 F.2d at 1453; *Turnbull*, 929 F.2d at 178; *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987).

Responsibility for purposes of § 6672 is a matter of status, duty, power and authority; whether exercised or not. *Howard*, 711 F.2d at 734; *Wood*, 808 F.2d at 415. It is not necessary that an individual have the final, or sole, word as to which creditors should be paid in order to be subject to liability under § 6672. *Verret*, 542 F.Supp.2d at 534. In fact, "responsibility does not require knowledge that one has that duty and authority." *Barnett*, 988 F.2d at 1454. Rather, it is sufficient that the person have some power, authority, and control over the process by which corporate funds are disbursed to find that he is a "responsible person" under § 6672. *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978).

Responsible person status is not limited to people who perform the mechanical jobs of collection and payment of corporate funds. The Fifth Circuit, like other circuits, looks at a number of circumstantial indicia of responsible person status when a party lacks the precise

responsibility of withholding or paying the taxes. ***Barnett***, 988 F.2d at 1455. In ***Barnett***, the Court noted that:

> [W]e cannot ignore the extensive case law that narrowly constrains a factfinder's province in § 6672 cases. Thus, although "the facts ... are critical in ... any § 6672 cases," ***Commonwealth Community Bank of Dallas v.United States***, 665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of responsibility.

***Barnett***, 988 F.2d at 1454 (footnote omitted). Recognized indicia of responsible person status include the following:

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive.

***Id***. at 1455 (citations omitted).

The burden of proof is on the Debtor to prove that he was not a responsible person and that he did not act willfully. ***Barnett***, 988 F.2d at 1453; ***Morgan v. United States***, 937 F.2d. 281, 285 (5th Cir. 1991); ***Liddon v. United States***, 448 F.2d 509, 513-14 (5th Cir. 1971). Although 26 U.S.C. § 7491(a) provides for a shift of the burden of proof to the United States in certain circumstances, § 7491 "is inapplicable to trust fund penalty cases." ***Mason v. Comm'r***, 132 T.C. 301, 323 (2009). As stated in ***Mason***, § 7491(a)(1) only applies to taxes imposed by subtitle A or B of the Internal Revenue Code, while "[t]he Section 6672 trust fund penalty is imposed by subtit. F . . . ." ***Id***. at n. 15. The Debtor bears the burden of proving that he did not act willfully. ***Bowen v. United States***, 836 F.2d 965, 968 (5th Cir. 1988); ***Mazo v. United States***, 591 F.2d 1151, 1155 (5th Cir. 1979).

### FINDINGS OF FACT

Debtor, Paul Allen Ingram, testified that he was the general sales manager for Santex.

Prior to working for Santex, he worked as a car salesman. Ingram admitted that he was the registered agent for Santex, as stated in the Certificate of Formation. (Debtor "D" -1). He further noted that the manager for Santex LLC is Purchem Environmental & Supply, LLC ("Purchem"). Ingram stated that his step-father, Richard Purcell, owned Purchem. Ingram also referenced Santex's Texas Franchise Tax Public Information Report that stated that Purchem is the manager, and Ingram only the registered agent as an indication of his limited role in Santex. (D-2).

Debtor testified in summary form that he did not own any stock in Santex and that his limited job duties for Santex were to bid jobs for Santex to lay pavement, assemble the employees and materials necessary to complete the job, and then supervise completion of the job. Ingram provided his W-2s for 2010 and 2011 that demonstrated that Ingram only received wages from Santex and that he was not compensated in any other way. (D-3; D-5). Further, Ingram testified that because most of his time at work was spent supervising jobs; he rarely spent more than a couple of hours in the office on a daily basis. Ingram emphasized that he had limited access to the company's books and that he did not input any of the data kept in Santex's books and records. Moreover, Ingram testified that he did not have permission to access Santex's Quickbooks software. He further explained that Santex did not even give him a computer, and that Ingram used his own personal computer to do his job.

Debtor stated that he could hire and fire employees only with the concurrence of Richard Purcell. Additionally, Ingram said he that he could fire an employee who was involved in or exhibited harmful conduct for the company without consulting Purcell. Notwithstanding his limited ability to manage personnel, Ingram did have an active role in other aspects of Santex. Specifically, he signed payroll tax returns (Form 941) for Santex for all four quarters of 2010 (Government Exhibit "G"-22-23,47-48) and the unemployment tax return (Form 940) for 2008

7

(G-49). Ingram stated that the only reason that he signed those tax returns was because the returns were given to him and he signed them without knowing what he was signing or the legal consequences of signing the returns. In addition, Ingram acknowledged that he signed many Santex checks for a variety of vendors or creditors. Debtor stated that when signing the checks he was merely acting as a "rubber stamp" in that he signed checks at the direction of the bookkeeper. Ingram maintained that when signing the checks he did not originate the drafting of the checks or determine who the payee was. Ingram testified that when he was in the office on a limited basis, he was presented with a number of computer generated checks placed in a folder with the simple instructions – "please sign." Debtor also stated that he did not know whether IRS payroll taxes were being paid because he did not examine the checks he was signing nor did he have access to Santex's Quickbooks account.

Although Debtor was insistent that he knew little about Santex's finances, there were some financial aspects of Santex that he grudgingly acknowledged. He knew that Santex had failed to remit child support payments to the Texas Attorney General's Office even though employee pay was being deducted to make the child support payments. Ingram also knew that a number of the checks that he signed were returned "NSF" for insufficient funds; and, as a result, the Bexar County District Attorney's Office was prosecuting him for writing hot checks. He also knew that, by late 2010, Santex was not paying its payroll taxes. As a result, he enlisted the aid of family to assist him in resolving the unpaid tax issue with the IRS.[1]

Ingram stated that when he learned of Santex's tax liabilities, he called Richard Purcell for assistance. According to Ingram, Purcell said that he would resolve Santex's tax issues. Purcell did enlist the assistance of his CPA to review Stanex's the books and records and

---

[1] Ingram indicated in an email to Purcell in August 2011 that he took responsibility for Santex's failure to pay its creditors and taxes. (G-66).

8

determine a course of action in dealing with the IRS. The CPA determined that Santex had not been paying its creditors, including the IRS, and that the company's records were in disarray.[2]

Not only were Santex's books in poor condition, but Ingram's testimony conflicted with the documentary evidence regarding Santex's financial condition. The United States produced a number of bank signature cards evidencing that Ingram was the originator and signatory of a number of bank accounts. (G-2-6,8-9,11-16). These bank accounts served a variety of functions. According to Ingram, some of the bank accounts were set up in connection with jobs that Santex was performing. (G-2 and G-3). Ingram explained that these accounts were segregated so that only the funding and payments from these accounts would be directly linked to a particular job. That said, Ingram was less than clear about why his name was on signature cards for non-job accounts – Santex Maintenance Account (G-5), Santex Petty Cash Account (G-6), General Bank Account (G-9), Santex Treasury Mgmt. Account (G-10), and a number of Compass Bank accounts (G-11 through G-16). Moreover, Ingram signed checks for several of the accounts. For example, Debtor signed payroll checks for employees. (G-7). He signed checks drawn on the Santex Treasury Mgmt. Account. (G-10). Debtor also signed checks issued from the Compass Bank accounts (G-11, G-14).

More confusing was Ingram's explanation regarding checks that he signed that were payable to himself. (G-17—G-19). Ingram stated that, because Santex's account had been frozen due to insufficient funds, he gave his personal checking account checkbook and checks to Santex's bookkeeper so that she could pay bills for Santex. In return, Santex deposited moneys into Ingram's personal account to fund the checks payable to Santex's creditors. Also, Ingram paid himself from his own account with money that Santex placed into his account.

---

[2] Doug Condor, the CPA for Santex, stated in his deposition that records were in disarray and that Ingram was unaware or disconnected from the condition of the records. (G-60 at 48).

Additionally, Ingram also explained that there were occasions where Santex company accounts were used to pay his personal bills. For example, Santex did pay for Debtor's rent as a "gift from Ingram's mother." (G-9). Also, Santex paid some of Debtor's legal fees for representing him in connection with the hot checks he wrote to Santex's creditors. There were also checks written to the District Attorney to compensate victims of NSF checks. (G-20).

Ingram's testimony was not corroborated by other witnesses who either testified or provided depositions or affidavits. Jerry Valvarde worked with Ingram as a Santex employee from 2009-2011. Valvarde stated that Ingram interviewed him, set his pay, and held himself out as director of operations for Santex. Valvarde said that Ingram signed his payroll checks and also knew that some checks were bouncing. Valvarde also testified that Ingram told him that he was the "boss" for Santex, had business cards with the title "President," and was the owner of the company.

According to Ingram, he and Valvarde were rarely together and Santex employees knew that Purcell was the owner of Santex. Ingram alleged that Valvarde's testimony was not credible because Valvarde had little opportunity to observe Ingram, spending most of his time in the field rather than the office. Ingram also argued that Valvarde cannot be considered credible because he purportedly stole property from Santex. Ingram further alleged that Valvarde used Santex equipment to perform jobs meant for Santex, collecting payment himself.

Violet Rodriguez, who worked as Santex's bookkeeper during some of the time in which Ingram was employed, stated in her affidavit that Ingram was entitled to use the Santex operating account for his personal expenses. (G-42). She observed that Debtor ran Santex and had sole authority to operate the business. Rodriguez said that "Rick Purcell was only the owner on paper." (*Id*.). Rodriguez also stated that Ingram authorized bills and payments to creditors and the opening and closing of bank accounts. (*Id*.). Further, Rodriguez observed that Ingram signed

or co-signed loans, authorized payroll, and would authorize tax deposits even though the bank account was overdrawn. When Rodriguez questioned Ingram about checks not clearing, Ingram indicated that "he would figure something out." (*Id*.)

Richard Purcell stated that he and his wife invested money in Santex to assist Debtor in starting up the business. (G-57 at 11-12). Purcell stated that he and his wife contributed $200,000 for Santex to assist Ingram in purchasing equipment and materials. (*Id*.) Purcell indicated that Ingram was responsible for the financial management of the company and that Ingram was in charge of the day to day operations of the business. (*Id*. at 10-14). Purcell was aware of Santex's financial records being is disorder and did request that Doug Condor review the records. (*Id*. at 21). Purcell was also aware that Ingram was in charge of the check signing and that Debtor did use Santex money to pay for his personal expenses. (*Id*. at 29-33). Purcell also denied Ingram's assertion that Purcell knew Santex was not paying IRS taxes. According to Purcell, he first learned of Santex's failure to make IRS tax payments from other parties after Ingram left Santex. (*Id*. at 38-40). Purcell corroborated Valvarde's testimony that Ingram held himself out as the president of Santex responsible for its entire operations. (*Id*. at 58).

Keith Ingram, Debtor's brother, also had his deposition taken in connection with Debtor's claim objection. (*See* G-59). Keith Ingram and his wife, Dawn Ingram, took personal time in the summer of 2011 to assist Debtor in reconciling Santex's books and financial affairs. (G-59 at 12-13). Keith Ingram observed that Santex's books and records were in an incomprehensible state. (*Id*.). He stated that, during his stay with Santex, creditors, employees, and vendors were coming to the premises demanding payment from Debtor. (*Id*. at 30). Keith Ingram also opined that his brother Paul knew that Santex was experiencing severe financial problems and that Debtor did know where company money was spent. (*Id*. at 52-53).

Dawn Ingram accompanied her husband Keith to attempt to assist Debtor in reconciling

Santex's books and records. According to her deposition, she has an associate's degree in accounting and has worked as an accountant for 20 years. (G-58 at 8-9). She stated that she and her husband went to assist Paul Ingram at his request. (*Id*. at 12). Dawn Ingram stated that she did serve as the bookkeeper for Santex for a short period of time, in addition to organizing its books. (*Id*. at 18). She explained that she had to take on the bookkeeping duties when Violet Rodriguez left abruptly while she was there. (*Id*.). Notwithstanding Debtor's testimony, Dawn Ingram stated that Debtor had Santex's Quickbooks software installed on his computer. (*Id*. at 120). During her stay at Santex, Dawn Ingram noted that she could not find any deposit tickets for payroll taxes. (*Id*. at 32). Dawn Ingram did prepare employee pay and remit the payroll taxes to the IRS. (*Id*. at 34). In the course of her examination of Santex's bank statements and records, Dawn Ingram found that Santex paid for Debtor's apartment, some of his house payments, gym membership, dating service, attorney's fees, and withdrawals totaling over $542,000. (G-58 at 98-103).

## APPLICATION AND CONCLUSIONS OF LAW

*Is Debtor a Responsible Officer as Defined under 26 U.S.C. § 6672?*

Under Fifth Circuit precedent, recognized indicia of responsible person status include the following:

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive.

*Barnett*, 988 F.2d at 1455 (citations omitted).

Here, the evidence demonstrates that Debtor met all but one indicia of being a responsible officer – the ownership of stock. The evidence provided does not indicate that there

12

was any board at Santex, but it was clear from the testimony of the witnesses that Ingram was in charge of Santex. Paul Ingram told Valvarde that he was the president. Richard Purcell allowed him to run the day to day operations of Santex. Debtor directed office personnel such as Violet Rodriguez in the bookkeeping functions. He used company funds as if the funds were his own. He told both his brother and sister-in-law that he was in charge of the company.

Additionally, there is little doubt that Paul Ingram ran the day to day operations of Santex. This indicia overlaps with other considerations – authority to hire and fire employees; make decisions as to the disbursement of funds and payments to creditors; and authority to sign checks. All of these factors are present here. Ingram ran Santex. Richard Purcell indicated that he deferred to Ingram running Santex and had no input regarding its operations. (G-57 at 15). Valverde and Rodriguez stated that Ingram directed the company. Dawn Rodriguez noted that, in her brief tenure as bookkeeper, she received her instructions directly from Debtor.

Ingram also had the authority to hire and fire employees. He admitted as much but attempted to qualify his answer by saying that he relied on Purcell for final authority to fire employees. Purcell denied that he was consulted regarding the hiring or firing of any Santex employees. (G-57 at 15, 38, and 58). Violet Rodriguez, in her affidavit, corroborated what Purcell said in his deposition that Debtor was solely responsible for running the daily operations of Santex. (G-42). Additionally, Rodriguez stated that Ingram authorized bills and payments to creditors. (*Id.*). There is no evidence that any other person at Santex performed this function. Further, the Court notes that Debtor was a signatory on many of Santex's accounts and that the checks produced into evidence contain Ingram's signatures. Dawn Ingram and Violet Rodriguez both indicated that Debtor was the only person who authorized tax deposits. Moreover, it is uncontroverted that Ingram signed the payroll tax returns for the periods in which he was assessed a responsible officer penalty.

Ingram's rebuttal to the culmination of all this evidence was that he only signed checks and tax returns at the direction of someone else. The totality of evidence produced shows that this is not true, and that Paul Ingram managed, directed, and determined how Santex paid its bills and had sole authority to make tax deposits and sign tax returns. Under the paradigm of *Barnett*, Debtor is a responsible officer under § 6672(a).

*Did Debtor willfully fail to collect, truthfully account for, or pay over such taxes?*

As stated by the Fifth Circuit in *Mazo*:

> In essence the appellants' primary argument is that an issue was created with respect to willfulness by their contention that Lavoie, the controller, misled them by asserting that he had taken care of the matter or would take care of the matter for them. However, once they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning.

591 F.2d at 1157 (emphasis added).

The responsible person also acts willfully if he proceeds with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government. *Brown v. United States*, 591 F.2d 1136, 1140 (5th Cir. 1979). Ingram acted with reckless disregard by doing nothing to correct the procedures at Santex to ensure that the withholding taxes were paid. Ingram signed the payroll tax returns with a stated liability and did nothing prospectively to address the non-payment of taxes in 2009 or 2010. A district court in the Western District of Texas, when granting summary judgment in favor of the United States, noted this rule of law:

> Once Ortiz "became aware of the tax liability, he had a duty to ensure that the taxes were paid before any payments were made to other creditors." *Barnett*, 988 F.2d at 1457. The IRS's evidence, that he failed to do so, establishes willfulness as a matter of law. *Id.* (citing *Howard*, 711 F.2d at 735).

*Lencyk v. Internal Revenue Serv.*, 384 F.Supp.2d 1028, 1036 (W.D. Tex. 2005).

A responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors, *Barnett*, 988 F.2d at 1457; *Gustin v. United States*, 876 F.2d 485, 492 (5th Cir. 1989), or if he recklessly disregards the risk that the taxes may not be remitted to the government. *Gustin*, 876 F.2d at 492. A responsible person who learns of the underpayment of taxes must use later-acquired unencumbered funds to pay the taxes; failure to do so constitutes willfulness. *Barnett*, 988 F.2d at 1458; *Logal v. United States*, 195 F.3d 299, 232 (5th Cir. 1999). Dawn Ingram found that Ingram used corporate money to pay his personal living expenses while not paying creditors, including the IRS. Ingram's decision to use corporate moneys as his own and not pay creditors evidences the willful nature of his acts. In addition,

> The responsible officer's actions before the due date for payment of the withheld taxes satisfies the "willfulness" requirement under section 6672: when the responsible officer (as defined by section 6671(b)) knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government . . . However, he subjects himself to liability under 6672 when he voluntarily and consciously "risks" the withheld taxes in the operation of the corporation, and subsequently the corporation is unable to remit the withheld taxes.

*Newsome v. United States*, 431 F.2d 742, 746 (5th Cir. 1970).

All that is required for a finding that debtor acted willfully is to show that he voluntarily, consciously and intentionally preferred any other creditor over the United States, which Ingram admitted to doing. (G-66 – email to Purcell indicating that he was at fault for not paying bills or taxes). Further, once Ingram became aware of the non-payment of taxes, he should have undertaken measures to ensure that future tax deposits were made.

In *Barnett*, the Fifth Circuit again noted this rule:

"[i]n the case of individuals who are responsible persons *both before and after withholding tax liability accrues*... there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that

15

obligation; *failure to do so when there is knowledge of the liability… constitutes willfulness."* **Mazo**, 591 F.2d at 1157 (emphasis added); *see also* **Turnbull**, 929 F.2d at 179-80; **Wood**, 808 F.2d at 416; **Garsky v. United States**, 600 F.2d 86, 91 (7th Cir. 1979). Barnett admitted at trial that he knew, beginning April 12, 1982, that withholding taxes were due *for the four previous quarters*.

988 F.2d at 1458.

The burden of proof is on Ingram to prove that he was not a responsible person and that he did not act willfully. **Barnett**, 988 F.2d at 1453; **Morgan**, 937 F.2d. at 285; **Bowen**, 836 F.2d at 968; **Mazo**, 591 F.2d at 152-53; **Liddon**, 448 F.2d at 513-14 (5th Cir. 1971). He failed to produce sufficient evidence to overcome the IRS's determination that he is a responsible officer for paying payroll taxes for Santex. The evidence demonstrates that Ingram was aware that IRS tax deposits were not being paid when he signed the payroll tax returns. Ingram also knew that the IRS was not being paid; he directed which creditors were to be paid and he had control and access to Santex's bank accounts. Ingram also had access to Santex's books and records on his computer and he had direct supervision of Santex's bookkeepers. Debtor's conduct was willful in not remitting payroll taxes to the IRS.

IT IS THEREFORE ORDERED that Debtor's Objection to Claim is DENIED. Both parties shall bear their own costs in this matter.

# # #